MARION CALDWELL, an Infant, by CYRIL C. CALDWELL, Her Guardian ad Litem, et al., Appellants, *v.* VILLAGE OF ISLAND PARK, Respondent.

Argued March 6, 1952; decided July 15, 1952.

*Jules B. St. Germain* and *Harry Pfeffer* for appellants.
I. Defendant operated the Beach Park as a private or corporate function, and governmental immunity did not attach to free it from liability for its negligence. (*Augustine* v. *Town of Brant,* 249 N. Y. 198; *Van Dyke* v. *City of Utica,* 203 App. Div. 26.) II. Defendant was under a duty to furnish supervision of the Beach Park and to exercise reasonable care in protecting its users, not only during the period when admission was charged, but whenever the beach was opened to the public. (*Tantillo* v. *Goldstein Bros. Amusement Co.,* 248 N. Y. 286; *Ross* v. *Breakers,* 49 A. 2d 14; *Van Dyke* v. *City of Utica,* 203 App. Div. 26; *Dorsey* v. *Chautauqua Inst.,* 203 App. Div. 251.) III. Defendant was guilty of actionable negligence. (*McDonald* v. *Central School Dist. No. 3,* 179 Misc. 333, 264 App. Div. 943, 289 N. Y. 800; *Daly* v. *State of New York,* 226 App. Div. 154; *Keer* v. *Children's Aid Soc.,* 252 App. Div. 874; *Dorsey* v. *Chautauqua Inst.,* 203 App. Div. 251; *Van Dyke* v. *City of Utica,* 203 App. Div. 26; *Schubart* v. *Hotel Astor,* 168 Misc. 431, 255 App. Div. 1012, 281 N. Y. 597; *Tyrell* v. *Quigley,* 186 Misc. 972; *Dinnihan* v. *Lake Ontario Beach Improvement Co.,* 8 App. Div. 509; *Collentine* v. *City of New York,* 279 N. Y. 119; *Fletcher* v. *Baltimore & Potomac R. R.,* 168 U. S. 136; *Rafsky* v. *City of New York,* 257 App. Div. 855; *Smith* v. *City of Albany,* 257 App. Div. 715; *Garber* v. *Central School Dist. No. 1,* 251 App. Div. 214; *Fedearowicz* v. *City of Amsterdam,* 268 App. Div. 803; *Fritz* v. *City of Buffalo,* 277 N. Y. 710; *Schneider* v. *Village of Lake George,* 280 N. Y. 507; *Clayton* v. *City of Niagara Falls,* 252 N. Y. 595; *Hunt* v. *City of New York,* 257 N. Y. 533; *Applebaum* v. *Board of Educ. of City of N. Y.,* 297 N. Y. 763.) IV. Supervision requirements of a playground, park, beach or recreation center refer not only as to the physical condition of the equipment, but also to safeguarding the users against the acts of third persons.

(*Fritz* v. *City of Buffalo,* 277 N. Y. 710; *Hunt* v. *City of New York,* 257 N. Y. 533; *Lane* v. *City of Buffalo,* 232 App. Div. 334; *Smith* v. *City of Albany,* 257 App. Div. 517; *Shea* v. *City of New York,* 265 App. Div. 962; *Rafsky* v. *City of New York,* 257 App. Div. 855; *Landau* v. *City of New York,* 180 N. Y. 48; *Greiner* v. *City of Syracuse,* 228 App. Div. 566, 256 N. Y. 688; *McFadden* v. *Bancroft,* 313 Mass. 56.)

*Patrick E. Gibbons* and *Royce A. Wilson* for respondent. The complaint was properly dismissed. (*Miller* v. *Board of Educ., Union Free School, Dist. No. 1,* 291 N. Y. 25; *Govel* v. *Board of Educ. of City of Albany,* 267 App. Div. 621; *Kantor* v. *City of New York,* 251 App. Div. 454; *Lutsker* v. *Board of Educ. of City of N. Y.,* 287 N. Y. 822; *Hoose* v. *Drumm,* 281 N. Y. 54; *Graff* v. *Board of Educ. of City of N. Y.,* 258 App. Div. 813, 283 N. Y. 574; *Schubart* v. *Hotel Astor,* 168 Misc. 431, 255 App. Div. 1012, 281 N. Y. 597; *Curcio* v. *City of New York,* 275 N. Y. 20; *Whittaker* v. *Village of Franklinville,* 265 N. Y. 11.)

CONWAY, J. This action is by an infant, through her father as guardian ad litem, for personal injuries, and by her father individually, for medical expenses and loss of services arising out of the alleged negligence of the defendant Village of Island Park. The cause came on for trial in the Supreme Court, Nassau County, before a jury. A verdict was rendered in favor of plaintiffs and a judgment entered thereon. On appeal the Appellate Division, Second Department, by a divided court, reversed the judgment on the law and dismissed the complaint.

The defendant village is a municipal corporation which, in July of 1950, owned and operated a beach area known as Island Park Beach Park. In the summer months the Beach Park was the regular meeting place of the children of the community and provided their main amusement. In addition to a bathing beach, the park contained such recreational facilities as a handball court, an area set aside for softball games, a dance floor and a high slide for children. During the summer season the park was open from 9:00 A. M. to 11:00 P. M. Between the hours of 9:00 A. M. and 6:00 P. M. nonresidents of the village were required to pay an admission fee whereas residents were admitted upon the presentation of season passes issued by the village board, upon the payment of prescribed sum, and during those hours the

village employed lifeguards and a youth recreation director. At 6:00 P. M. the turnstiles were closed and two gates in the fence enclosing the park area were opened. Thereafter, until closing time the park was open, without charge, to all members of the public and, during the hours of darkness preceding 11:00 P. M., the area was illuminated by floodlights. There was a sign on the premises which read:

" SWIMMING
AT OWN RISK AFTER 6 P.M.
BEACH CLOSED AT 11 P. M."

. Witnesses testified to the effect that on July 2, 1950, firecrackers had been exploded in the Beach Park on several occasions and that on the following day, while lifeguards were present on the beach, firecrackers had been discharged " every once in a while." One witness had complained of the fireworks to a lifeguard and, according to her testimony, no action was taken on the complaint. On the evening of July 3d, a swimming carnival had been held at the beach and was attended by two village trustees. During that evening the firecrackers, as described by one witness, were " terrific ". There was further testimony tending to establish that the use of firecrackers by visitors to the beach continued intermittently on July 4th from 5:00 P. M. on. At about 8:30 on the evening of that day plaintiff and several other girls went to the park to attend a prearranged beach party. While plaintiff was sitting on the beach a group of boys entered the park and proceeded to discharge firecrackers. That activity was carried on for fifteen or twenty minutes during which time a Roman candle was discharged. A second Roman candle was ignited and a flare emitted therefrom struck plaintiff's left eye causing the injuries for which recovery is now sought.

Plaintiffs contend that defendant failed to provide adequate supervision of the Beach Park and to exercise reasonable care for the protection of its users. The defendant village recognizes that it was obliged to provide supervision during those hours when admission fees were charged but asserts that the duty terminated with the closing of the turnstiles at 6:00 P. M. and that it was under no obligation to suppress the activity which resulted in plaintiff's injuries.

Our concern, then, is the nature of the duty, if any, owed to plaintiff by the defendant village.

It is well settled that regardless of whether or not it is a source of income the operation of a public park by a municipality is a quasi-private or corporate and not a governmental function. (*Augustine* v. *Town of Brant,* 249 N. Y. 198, 201–206; *Whittaker* v. *Village of Franklinville,* 265 N. Y. 11, 16.) Where a village thus undertakes to do more than is required of it as a governmental unit it assumes the burdens and liabilities concomitant therewith (see *Augustine* v. *Town of Brant, supra,* p. 206).

Of course, the duty owed by a private owner or occupier of land to an ordinary trespasser or bare licensee is merely to refrain from the infliction of willful and wanton injury. A private landholder need not maintain his property in a suitable condition for use by such persons. (*Mendelowitz* v. *Neisner,* 258 N. Y. 181, 184; see, also, *Carbone* v. *Mackchil Realty Corp.,* 296 N. Y. 154; *Zaia* v. *Lalex Realty Corp.,* 287 N. Y. 689; *Meiers* v. *Koch Brewery,* 229 N. Y. 10; *Vaughan* v. *Transit Development Co.,* 222 N. Y. 79.)

However, it is clear that the duty of a municipality to those who have been invited to avail themselves of park facilities is more than that owed by a private landholder to a trespasser or licensee. Liability is imposed for failure to maintain a park in a reasonably safe condition. (*Collentine* v. *City of New York,* 279 N. Y. 119; *Hunt* v. *City of New York,* 257 N. Y. 533; *Clayton* v. *City of Niagara Falls,* 252 N. Y. 595.) The duty goes beyond the mere maintenance of the physical condition of the park. Although it has been held that strict or immediate supervision need not be provided, the municipality may be obliged to furnish an adequate degree of general supervision. (See *Fritz* v. *City of Buffalo,* 277 N. Y. 710; *Curcio* v. *City of New York,* 275 N. Y. 20, 24; *Peterson* v. *City of New York,* 267 N. Y. 204, 206.) That duty of supervision may require the regulation or prevention of such activities of park visitors as endanger others utilizing the park. Thus in *Fritz* v. *City of Buffalo (supra),* a municipality was held liable for injuries to a skater which resulted from his being struck by one of a group of skaters playing " crack-the-whip " — an activity which under the circumstances of that case was hazardous and unreasonable.

In short, the municipality which extends to its citizens an invitation to enter and use recreational areas owes to those accepting that invitation a duty of reasonable and ordinary care against foreseeable dangers. What degree of care is reasonable necessarily depends upon the attendant circumstances and is a jury question. " Essentially, what is negligence in a given case is a question of fact. Each case depends upon its own peculiar circumstances. Decisions in other actions in which damages are sought for personal injuries furnish no criterion or guide for determination of what is or is not negligence in a particular case involving its own peculiar facts and circumstances. Under circumstances existing in one case the ordinary care required might not be the same as that required under other circumstances. Negligence arises from breach of duty and is relative to time, place and circumstance (*Mink* v. *Keim,* 291 N. Y. 300, 304). Ordinary care must be in proportion to the danger to be avoided and the consequences that might reasonably be anticipated from the neglect (*Railroad Co.* v. *Jones,* 95 U. S. 439; *Bailey* v. *Central Vermont Ry., supra* [319 U. S. 350]). It must be commensurate with known dangers." (*Sadowski* v. *Long Island R. R. Co.,* 292 N. Y. 448, 455, 456.)

It is not a prerequisite for the imposition of the foregoing duties that a municipality exact an admission fee from those using its parks. In *Curcio* v. *City of New York* (*supra,* pp. 23, 24) where there was no evidence that such a fee had been charged we declared " The duty of exercising ordinary care required the defendant to provide an adequate degree of general supervision." Recovery was denied there for the reason that the city was not derelict in the performance of that duty. In the subsequent cases of *Fritz* v. *City of Buffalo* and *Collentine* v. *City of New York* (*supra*) the presence or absence of an admission fee played no role.

The duty of supervision may not be confined only to those activities for which special facilities or equipment have been provided or to some particular activity, e.g., swimming, for which a park has been especially established. Where a municipality undertakes to maintain an area for recreation in general some degree of supervision ought to be exercised to assure that the area is reasonably fit for that purpose. Under ordinary

circumstances, the necessary degree of supervision of such an area may well be slight and may require no more than casual or periodic inspection. But when in the discharge of that duty it is or should be apparent or it otherwise comes to the attention of a municipality that its park is being used by visitors as a site for criminal and patently dangerous activities and that such use is likely to be continued, we think that the municipality may not ignore the foreseeable dangers, continue to extend an invitation to the public to use the area and not be held accountable for resultant injuries.

The circumstances of this case are unusual. The injury here did not result from a danger inherent in the ordinary play of children. The Legislature has recognized that the unsupervised discharge of fireworks is so fraught with serious dangers that their possession or use, not in compliance with stringent requirements, has been made a crime. (Penal Law, § 1894-a.) On the basis of the testimony which we have summarized at the outset a reasonable man might infer that the defendant village knew or should have known that firecrackers had been exploded on the Beach Park over a considerable period of time preceding the accident. A jury here drew such inference. That being so, there was reason for the village to believe that the illegal activities would continue and perhaps be increased on the day of plaintiff's injuries. Independence Day — the day of the accident — has long been the occasion of pyrotechnic displays and the use of all manner of explosive and inflammable devices.

It may not be said as a matter of law that knowledge of the use of the Beach Park for the discharge of firecrackers was insufficient to apprise the defendant village that other types of fireworks might be fired there. Firecrackers and Roman candles fall within the generic term " fireworks " and both have customarily been used in celebrating the Fourth of July.

We do not think that the trial court erred in permitting the jury to find that the injury complained of resulted from the negligent failure of the defendant village to take appropriate measures for the prevention of injuries threatened by the foreseeable continuation of the ultrahazardous and criminal activity known to be carried on in the Beach Park. Reasonable men could entertain the view that, without supervision adequate to

cope with the dangers known to exist, the invitation to use the Beach Park should not have been extended after 6:00 P. M.

Furthermore, where activities pregnant with danger are engaged in with the frequency we find here, it may justifiably be said that the *condition* of the village park was unsafe. Liability would then ensue just as in *Collentine* v. *City of New York, Clayton* v. *City of Niagara Falls,* and *Hunt* v. *City of New York* (*supra*).

In *Whittaker* v. *Village of Franklinville* (*supra*) recovery was denied to a person injured, while on a public thoroughfare, by the discharge of fireworks in an adjacent park. However, that case is not controlling here. Since then the Legislature has declared the discharge of fireworks to be unlawful and the infant plaintiff here was injured while within the park under an express or implied invitation. We do not think a municipality may with impunity induce unwitting citizens to seek recreation in a place which it knows to be the situs of criminal and dangerous activities.

The judgment of the Appellate Division should be reversed and the case remitted to that court for determination upon the questions of fact, if any, raised in that court, with costs in this court and in the Appellate Division to abide the event.

LEWIS, J. (dissenting). My dissent is prompted by the belief that the decision about to be made extends, beyond the present bounds of decisional law in this jurisdiction, the legal duty of municipalities in the care of public parks.

Upon the facts of record — fairly stated in the opinion by Judge CONWAY — I do not think it can be said that the defendant village failed to exercise the standard of care it owed to the infant plaintiff in the maintenance of Beach Park. That standard of care required of the defendant that it use reasonable means to protect the infant plaintiff from all dangers known by it or reasonably to be foreseen. That requirement included a duty to maintain the premises comprising Beach Park and the equipment there installed, in safe repair so as to prevent injury resulting from a defective condition existing on the property. (*Curcio* v. *City of New York,* 275 N. Y. 20, 23–24; *Peterson* v. *City of New York,* 267 N. Y. 204, 205–206.) There

is also impressed upon the village the legal duty to protect or warn against the presence on the beach of facilities which by their nature are likely to be a danger or risk to human life or safety. (*Clayton* v. *City of Niagara Falls,* 252 N. Y. 595; *Fedearowicz* v. *City of Amsterdam,* 293 N. Y. 814; *Riggi* v. *Village of Le Roy,* 301 N. Y. 735.) Thus the maintenance by a municipality of a public beach with facilities thereupon which are unsafe either because of their nature or their defective condition, without adequate protection or warning, constitutes actionable negligence.

However, the case at hand does not fall within the rule last stated above. Here, the plaintiffs did not attempt to plead, nor was there proof that Beach Park or any equipment there maintained by the village was unsafe or defective. The injuries suffered by the infant plaintiff were in no wise related to the nature or condition of the beach or of facilities there existing. The infant plaintiff was injured by a firework brought onto the beach by a third person and discharged there in violation of law. (Penal Law, § 1894-a, subd. 2.) The defendant's only connection with the accident was as owner of the premises upon which the accident occurred.

I am unable to concur with the view of a majority of the court that a municipality, as owner and maintainer of park land, may be held liable for personal injuries to a user of the park which did not result from a defect in, or danger from equipment or facilities, but occurred as a result of an illegal, careless act of a third person unrelated to the status of the park property, and in the absence of proof that the injury suffered was a risk reasonably to be foreseen. The defendant village is not a guarantor of the safety of its Beach Park. Its duty is limited to reasonable care against foreseeable danger. The plaintiffs have failed by their evidence to prove notice to the defendant village sufficient to create liability for the injury which befell the infant plaintiff resulting from the act of one coming onto the beach in unlawful possession of fireworks.

Accordingly, I dissent and vote to affirm the judgment entered upon the order of the Appellate Division.

LOUGHRAN, Ch. J., DESMOND and FROESSEL, JJ., concur with CONWAY, J.; LEWIS, J., dissents in opinion in which DYE and FULD, JJ., concur.

Judgment reversed, etc.