James E. Mulcahy, J.
Defendant moves to set aside the jury verdict in favor of the infant plaintiff in the sum of $3,000 and in favor of the plaintiff, Mary Monell, in the sum of $1,500.
The following principles of law are well settled: The city is not required to furnish immediate supervision of each and every part of the play areas under its jurisdiction. General supervision is all that is or should be required. It seems clear to me that the city complied with its duty of general supervision in the indicated circumstances in the light of the testimony *322 given upon the trial. To hold otherwise would place an insuperable burden upon the City of New York that would be beyond all reasonable and necessary standards. It is axiomatic that the city could not possibly station a policeman at each corner of every borough. By the same token it cannot have a supervisor or policeman at every point in Central Park. The particular area involved in this action consisted of eight baseball diamonds. It would be physically impossible and unrealistic to require one or more guards or supervisors to be physically present at each of these diamonds at all times in the area in question. If this unfortunate fracas between two different groups of children and the resultant injury to the infant plaintiff had taken place in a city street, there would hardly be any thought of suing the City of New York. In the indicated circumstances of this case, I do not see any basis for holding the city liable simply because the incident occurred on one of eight baseball diamonds on the Great Lawn area of Central Park. The city is not an insurer of the safety of persons using its play areas.
Another principle that would seem to be applicable is that unless there is a causal relationship between the alleged lack of supervision and the resultant injury, liability may not be imposed upon the city. As I said before, it is clear to me that the city sufficiently complied with its duties of general supervision. However, it would be speculative in the extreme to assume that if a guard or supervisor had been in the immediate area at the time of the happening complained of, he would have been able to prevent it. It is also well to remember that no regular baseball game was in progress at the time, but only a punch-ball game; I mention this to emphasize that no equipment furnished by the defendant was in use at the time but only the physical area of the baseball diamond in question.
The ease of Caldwell v. Village of Island Park (304 N. Y. 268) is readily distinguishable. Apart from the fact that it is a four-to-three decision, and giving full force and effect to the prevailing opinion therein, it is clear that the unusual facts and circumstances disclosed therein bear no parallel of any kind to the facts of this case. In that case the defendant village owned and operated a beach and recreational area and charged admission until 6:00 p.m. ; after that the beach and the area were opened to the public and the lifeguards and the director were withdrawn. Fireworks had been repeatedly exploded during the day and evening of July 2, 3, and 4. On July 4, at about 8:30 p.m., the infant plaintiff visited the beach and was injured by a flare from a Roman candle. In *323 reversing the determination of the Appellate Division, the Court of Appeals stated in part:
‘ ‘ Where a municipality undertakes to maintain an area for recreation in general some degree of supervision ought to be exercise to assure that the area is reasonably fit for that purpose. Under ordinary circumstances, the necessary degree of supervision of such an' area may well be slight and may require no more than casual or periodic inspection. But when in the discharge of that duty it is or should be apparent or it otherwise comes to the attention of a municipality that its park is being used by visitors as a site for criminal and patently dangerous activities and that such use is likely tobe continued, we think that the municipality may not ignore the foreseeable dangers, continue to extend an invitation to the public to use the area and not be held accountable for resulant injuries.
“ The circumstances of this case are unusual. The injury here did not result from a danger inherent in the ordinary play of children. The Legislature has recognized that the unsupervised discharge of fireworks is so fraught with serious dangers that their possession or use, not in compliance with stringent requirements, has been made a crime. (Penal Law, § 1894-a.) On the basis of the testimony which we have summarized at the outset a reasonable man might infer that the defendant village knew or should have known that firecrackers had been exploded on the Beach Park over a considerable period of time preceding the accident. A jury here drew such inference. That being so, there was reason for the village to believe that the illegal activities would continue and perhaps be increased on the day of plaintiff’s injuries. Independence Day— the day of the accident — has long been the occasion of pyrotechnic displays and the use of all manner of explosive and inflammable devices.” (Pp. 274-275, emphasis added.)
The case of Mandelowitz v. City of New York (277 App. Div. 1134) is also readily distinguishable from the case at bar. There the proof was “ that while the infant plaintiff was in a public playground, maintained and operated by defendant, a group of boys threw a large number of cardboard spools at her, first from outside, and then from within the playground; that this occurrence lasted for at least twenty minutes; that a playground attendant was within view and was aware of the incident while it was in progress, but ignored the infant plaintiff’s calls for assistance and took no steps to stop the boys from contitming to throw these objects; and that finally, while still in the playground, she was struck in the right eye by one of the spools. * * * In our opinion, under the circumstances disclosed by *324 this record, a question of fact was presented as to defendant’s negligence in failing to prevent the continuation of the assault on the infant plaintiff. ’’ (Emphasis added.)
In the instant case, there is no evidence that any attendant or supervisor was in the immediate vicinity so as to be aware of what was going on; nor were there any calls for assistance as in the Mándelo wits case (supra).' Anyone who has watched baseball or similar games in progress on city diamonds or other play areas knows that there are frequent arguments but that they seldom lead to violence. That young teenagers will argue loud and long in a situation of this kind is well known. However, no matter how long the arguments may have lasted, the throwing of the handful of dirt, included in which there was the stone which injured the infant plaintiff’s eye, happened suddenly, and the city cannot be held liable for the unexpected and unforeseeable act of one child inflicting injury upon another. Nor was there any evidence sufficient to establish any causal relationship between the claimed lack of supervision and the accident herein. In the brief submitted by the city herein, many authoritative cases are cited where recovery was denied to plaintiffs who had much stronger evidence in their favor than in the case at bar.
It seems clear to me that this was a 1 ‘ sympathy verdict ’ ’— one not properly based on the evidence in the case. Viewing the matter dispassionately, as I must, there was no evidence of any substance which would support this verdict. Giving the plaintiffs the benefit of every inference fairly to be deduced from the evidence herein, the plain fact is that the plaintiffs failed to prove any cause of action or to establish any basis for liability against the City of New York. The motion to set aside the verdict is granted and the complaint dismissed.